# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SAYAH SALAH, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 07-0144-CV-W-FJG |
| ) | |
| ALBERTO GONZALES, et al., ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Presently before the Court are Plaintiffs' Motion for Summary Judgment (Doc. No. 12) and Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No.18). Plaintiffs, by this case, seek hearing on their applications and grant of naturalization or in the alternative, writs of mandamus compelling the defendants to naturalize plaintiffs.

I.

The facts of this case are undisputed. Plaintiffs Sayah Salah, Xiaoyun Zang, Siidi Sheikh, Mohamed Mohamud, Mohamed Abdalla, and Abdulkadir Mohmed are lawful permanent residents who have applied for naturalization with the U.S. Department of Homeland Security. All plaintiffs were interviewed by the U.S. Citizenship and Immigration Services (CIS), well over 120 days from the filing of this suit. The Federal Bureau of Investigation (FBI) has not completed plaintiffs' mandatory security checks, specifically name checks.

By way of background, the process for naturalization may progress in the following manner:

> An applicant for Citizenship must first submit a completed Form N-400 Application for Naturalization to the CIS. 8 C.F.R. § 334.2(a). After the application is filed, CIS "shall [if not waived] conduct an investigation of the applicant" that includes, at a minimum, "a review of all pertinent records" and "police department

checks." *Id.* § 335.1. The examination and investigation of the applicant is prescribed in 8 U.S.C. § 1446. Once the investigation is completed, each applicant "shall appear in person" before a CIS officer for an examination. 8 C.F.R. § 335.2(a). The "examination" includes questioning by the officer about matters the applicant has included in the written submissions in addition to tests administered on "English literacy and basic knowledge of the history and government of the United States." *Id.* § 335.2(c). The regulations provide that the examination is to be conducted only after the FBI has provided a "definitive response that a full criminal background check of the applicant has been completed" by confirming (1) the applicant has no administrative or criminal record, (2) the applicant has an administrative or criminal record, or (3) the FBI cannot definitively respond because the necessary fingerprints analysis cannot be completed on the available information. *Id.* § 335.2(b)(1)-(3). "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2." *Id.* § 335.3(a).

If the CIS does not issue a decision within 120 days of the examination, applicants may seek judicial relief under 8 U.S.C. § 1447(b), which states:

"If there is a failure to make a determination [on the application for naturalization] before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [CIS] to determine the matter."

*Walji v. Gonzales*, __F.3d__, 2007WL2685028 at *1 -2 (5th Cir. Sept. 14, 2007) (per curiam) (footnote omitted) (alteration in original). In the present case, as discussed below, the examination took place before the investigation was completed, and plaintiffs seek judicial relief under 8 U.S.C. § 1447(b).

II.

"Federal courts must determine they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, __ U.S. __, 127 S. Ct. 1194, 1196 (2007). Defendants contend that this case should be dismissed pursuant to Rule 12(b)(1) because § 1447(b) does not

2

confer jurisdiction in this court, asserting that the 120-day period does not start until that entire process is complete, which includes plaintiffs' pending FBI name checks.[1] Plaintiffs contend that § 1447(b) expressly grants subject matter jurisdiction over their claims.

Section 1447(b), as quoted *supra*, allows an applicant to request a hearing before a district court after the 120-day period following the examination. The parties dispute the meaning of the term "examination."

> Numerous district courts have decided the issue, reaching opposite conclusions. One of the earliest district courts to consider the issue adopted the position advanced by the Government, concluding that "an examination is not a single event, but instead is essentially a *process* the agency follows to gather information concerning the applicant," which includes the FBI's security check. *Danilov v. Aguirre,* 370 F. Supp.2d 441, 443-44 (E.D.Va.2005) (emphasis in original). Therefore, the *Danilov* court held, the "examination" cannot be considered complete until after the FBI concludes its background investigation of an applicant and, as a consequence, courts lack subject matter jurisdiction before the lapse of 120 days after the entire process has been completed. *Id.* Adopting the district court's analysis in *Danilov,* a handful of district courts have also held that the 120-day period is not triggered until all aspects of the application process are completed, including the FBI background check.
>
> However, the majority of courts addressing this issue have concluded that the term "examination" in § 1447(b) refers to a discrete event-the agency's initial interview of the applicant-and that the 120-day period begins to run as of the date that interview is concluded. Generally, these courts reject the *Danilov* court's interpretation of § 1447(b) for three reasons: the plain language of § 1447(b), the clear inferences to be drawn from the total statutory and regulatory scheme, and the stated legislative purpose of § 1447(b).

*Walji v. Gonzales*, __F.3d__, 2007WL2685028 (5th Cir. Sept. 14, 2007) (per curiam) (footnotes

---

[1] Defendants rely heavily on *Walji v. Gonzales*, 489 F.3d 738 (5th Cir. 2007), to support their position. Upon rehearing, however, the Fifth Circuit rejected the position put forth by defendants here. *Walji v. Gonzales*, __F.3d__, 2007WL2685028 (5th Cir. Sept. 14, 2007) (per curiam).

omitted). Moreover, this court previously has found that the term "examination" refers to the agency's interview of the applicant. *Andron v. Gonzales*, 487 F. Supp. 2d 1089 (W.D. Mo. 2007).

The language at issue has a plain and unambiguous meaning. Congress further has made its intent clear by naming the policy objectives underlying §1447(b): (1) reducing waiting times for naturalization applications; (2) reducing the burdens on the courts and immigration agencies; (3) facilitating consistent and fair naturalization decisions; and (4) providing applicants a choice as to the forum in which their applications were adjudicated. *United States v. Hovsepian*, 359 F.3d 1144, 1163-64 (9th Cir. 2004) (en banc). If the intent of Congress is clear, the court "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). Additionally, in "reviewing a federal agency's interpretation of a federal statute, a federal court must defer to the agency's interpretation only if it finds that the agency's interpretation is consistent with the plain language of the statute or represents a reasonable interpretation of an ambiguous statute." *Harmon Indust., Inc. v. Browner*, 191 F3d. 894, 897 (8th Cir. 1999).

The term "examination" as used in § 1447(b) refers to the applicant's initial examination. Accordingly, 1447(b) gives this court subject matter jurisdiction over plaintiffs' claims because more than 120 days have passed since plaintiffs' examinations.

III.

Turning to the motions for summary judgment, such judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, indicates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56; Castillo v. Ridge*, 445 F.3d 1057, 1060 (8th Cir. 2006). The summary judgment rule is intended "to

4

isolate and dispose of factually unsupported claims" and should be applied to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). Additionally, the court notes that judicial deference is "appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).

The plain language of § 1447(b) gives this Court jurisdiction to hear the applications and either determine the matter or remand the matter to the CIS with appropriate instructions. Plaintiffs seek naturalization or remand with specific instructions to approve the applications and administer the oath. Were the court to proceed in the naturalization process, background check should be completed. *See Daami v. Gonzales*, 2006 WL 1457862 at *6 (D.N.J. May 22, 2006) (noting the statutory prohibition on adjudication of an application without a complete investigation); *Manzoor*, 472 F. Supp. 2d at 808-09 (finding difficulty in conducting background checks and recognizing the agency's ability to interpret the results of such checks and follow up appropriately).

In regard to background checks:

> We are mindful of Congress's intent that an FBI background check is to be completed before the adjudication of every naturalization application. We are also not oblivious to the increased workload the FBI has faced since the events of September 11, 2001 and in particular its backlog of name check requests caused by the resubmission of many requests by the immigration services.
>
> But if the triggering date were the date on which the entire process was concluded, irrespective of the interview date, the applicant would have no recourse for delays and courts could do nothing to encourage or require the CIS and the FBI to act in a timely fashion. That would entirely erase the effect of § 1447.
>
> It is clear in this case that events have occurred-or not occurred-out of order. Before the officer administered the examination to [plaintiff], the FBI was supposed to provide a "definitive response" that its background investigation was complete. That did not happen. Instead the officer went ahead with the examination.

5

> The plethora of unpublished district court opinions on this issue may indicate that CIS finds some utility in proceeding without the FBI's response. But because there is currently no required period of time for CIS to conduct the initial interview, CIS could avoid the jurisdiction of the courts by following its own order of events. As a practical matter, this may yet result in long waiting times for applicants. Nevertheless, because the clear intent of Congress was to accelerate naturalization applications, and the statutory and regulatory language gives a definite time frame for decision once an examination has occurred, the statute is violated in situations such as [plaintiff's]. *Id.* That the CIS failed to follow its own protocol in the instant case does not provide support for the Government's statutory interpretation.

*Walji v. Gonzales*, __F.3d__, 2007WL2685028 at *5-6 (5th Cir. Sept. 14, 2007) (per curiam) (footnotes omitted). Consequently, remand of this matter to the CIS is appropriate. Because this case is remanded to CIS, defendants' contentions regarding mandamus jurisdiction under 28 U.S.C. § 1361 are no longer applicable.

Accordingly, Defendants' Motion (Doc. No. 18) is DENIED. Plaintiffs' Motion (Doc. No. 12) is GRANTED IN PART and DENIED IN PART, and this case is REMANDED with instructions to the FBI to complete plaintiffs' name checks within sixty (60) days of this Order and to the CIS to make a decision on each plaintiff's application within thirty (30) days of receiving the individual's completed background or name check.

Date: 10/19/07  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri   Fernando J. Gaitan, Jr.
  Chief United States District Judge